# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CAREY D GODWIN,<br><br>            Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>            Defendant. | No. 2:15-cv-00268-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a Magistrate Judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 15).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

1    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

2    404.1520(b); 416.920(b).

3         If the claimant is not engaged in substantial gainful activity, the analysis

4    proceeds to step two.  At this step, the Commissioner considers the severity of the

5    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

6    claimant suffers from "any impairment or combination of impairments which

7    significantly limits [his or her] physical or mental ability to do basic work

8    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

9    416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

10   however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

11   §§ 404.1520(c); 416.920(c).

12        At step three, the Commissioner compares the claimant's impairment to

13   severe impairments recognized by the Commissioner to be so severe as to preclude

14   a person from engaging in substantial gainful activity.  20 C.F.R. §§

15   404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

16   severe than one of the enumerated impairments, the Commissioner must find the

17   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

18        If the severity of the claimant's impairment does not meet or exceed the

19   severity of the enumerated impairments, the Commissioner must pause to assess

20   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on September 14, 2012.  Tr. 192-205.  In both applications, he alleged a disability onset date of April 1, 2012.  *Id.*  The applications were denied initially, Tr. 122-29, and on reconsideration.  Tr. 133-38. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on February 6, 2014.  Tr. 38-87.  On February 18, 2014, the ALJ denied Plaintiff's claim.  Tr. 16-31.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his disability insurance benefit claim through June 30, 2016.  Tr. 21.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 1, 2012.  Tr. 21.  At step two, the

ALJ found Plaintiff has the following severe impairments: degenerative disk disease of the lumbar spine and hepatitis C.  Tr. 21.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 22.  The ALJ then concluded that Plaintiff has the RFC to perform less than the full range of light work, with the following limitations

> posturals are limited to frequently except climbing ladders, ropes or scaffolds occasionally.  The claimant must avoid concentrated exposure to extreme cold and respiratory irritants.

Tr. 23.  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a hardware salesman, which does not require the performance of work-related activities precluded by Plaintiff's RFC.  Tr. 26.  The ALJ did not proceed to step five because of the finding at step four.  *See* Tr. 26.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 26.

On August 5, 2015, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income

1  under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the

2  following issues for this Court's review:

3      1.  Whether the ALJ properly weighed the medical opinion evidence; and

4      2.  Whether the ALJ reasonably determined that Plaintiff could perform past

5         relevant work.

6  ECF No. 14 at 5.

## DISCUSSION

8  **A.  Medical Opinion Evidence**

9      Plaintiff faults the ALJ for discounting the medical opinions of John Arnold,

10  Ph.D., and Casey Wyatt, PA-C, and for crediting the opinion of Minh Vu, M.D.

11  ECF No. 14 at 8-16.

12      There are three types of physicians: "(1) those who treat the claimant

13  (treating physicians); (2) those who examine but do not treat the claimant

14  (examining physicians); and (3) those who neither examine nor treat the claimant

15  but who review the claimant's file (nonexamining or reviewing physicians)."

16  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

17  "Generally, a treating physician's opinion carries more weight than an examining

18  physician's, and an examining physician's opinion carries more weight than a

19  reviewing physician's."  *Id.*  "In addition, the regulations give more weight to

20  opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111.  However, the

1  ALJ is required to "consider observations by nonmedical sources as to how an

2  impairment affects a claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d

3  1226, 1232 (9th Cir. 1987).

4      *1.  Dr. Arnold*

5      Dr. Arnold examined Plaintiff on November 19, 2012, Tr. 444-47, and

6  opined that Plaintiff has marked limitations "performing activities within a

7  schedule, maintaining attendance, adhering to customary work tolerances, and

8  completing a normal workday without interruptions from psychologically based

9  symptoms."  Tr. 25 (citing Tr. 446).  The ALJ assigned Dr. Arnold's opinion "little

10 weight[.]"  Tr. 25.

11     Because Dr. Arnold's opinion was contradicted by the less severe limitations

12 identified by Dr. Vu, Tr. 43-63, the ALJ must provide specific and legitimate

13 reasons for rejecting Dr. Arnold's opinion.  *See Bayliss*, 427 F.3d at 1216.

14     First, the ALJ rejected Dr. Arnold's opinion because it was not supported by

15 the medical evidence from his examination.  Tr. 25.  A physician's opinion may be

16 rejected if it is unsupported by the physician's treatment notes.  *See Connett v.*

17 *Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of

18 physician's opinion as unsupported by physician's treatment notes).  A medical

19 opinion also may be rejected by the ALJ if it is conclusory, contains

20 inconsistencies, or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas v.*

1   *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Here, Dr. Arnold conducted one

2   "mini-mental status examination[,]" but did not perform objective testing, or

3   review Plaintiff's medical record.  *See* Tr. 444-47.  The ALJ found that the results

4   from the mental status examination did not support Dr. Arnold's severe assessed

5   limitations.  Tr. 25.  As the ALJ noted, most of the examination findings were

6   within normal limits.  Tr. 25.  For example, during the examination Plaintiff's

7   appearance was within normal limits, his speech was logical, he was

8   complaint/congenial during the interview, and his thought process and content

9   were within normal limits, and he recalled two of three objects after a five-minute

10  delay.  Tr. 25 (citing Tr. 447).  Dr. Arnold indicated that Plaintiff's fund of

11  knowledge was consistent with his stated education level.  Tr. 25 (citing Tr. 447).

12  Although the Plaintiff struggled with some of the tests, such as serial sevens and

13  recalling the last five Presidents, overall, his mental status exam results were fairly

14  benign.  Tr. 447.  The ALJ's finding that Dr. Arnold's assessed limitations were

15  not supported by the medical record is a clear and convincing reason to reject his

16  opinion.

17      Next, the ALJ discounted Dr. Arnold's opinion because it was conducted for

18  Washington State Department of Social and Health Services (DSHS).  Tr. 25.  The

19  ALJ gave four reasons for discrediting DSHS evaluations.  Tr. 25.  Plaintiff

20  challenges these general reasons for discrediting the DSHS evaluations, to the

extent that the ALJ also relied on these reasons, when she gave Dr. Arnold's opinion little weight. ECF No. 14 at 9-12. For example, the ALJ found that DSHS evaluations are largely based on a claimant's self-report, and the ALJ found that Plaintiff's statements were not entirely credible. Tr. 25. An ALJ may discredit an opinion that is based on a claimant's exaggerated or otherwise unreliable self-report. *See Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). Plaintiff does not challenge the ALJ's adverse credibility finding in this Court, and therefore any challenge to that finding is waived on appeal. *Pottle v. Asture,* 266 Fed.App'x 526, 528-29 (9th Cir. 2008) (holding Plaintiff waived on appeal his argument that the ALJ's step three analysis was flawed because Plaintiff failed to raise the issue in the District Court); *Hughes v. Astrue*, 357 F. App'x 864, 866 (9th Cir. 2009) (holding failure to challenge the ALJ's credibility finding in the District Court waives any challenge to that finding on appeal). Here, there was a lack of objective evidence in Dr. Arnold's report. Dr. Arnold conducted one "mini-mental status examination[,]" but did not perform objective testing, or review Plaintiff's medical record. *See* Tr. 444-47. Dr. Arnold took a truncated medical history from Plaintiff. Tr. 444-45 (Dr. Arnold's patient examination notes, including Plaintiff's self-reported medical history, fit on a little more than a page of generously-spaced text.) Dr. Arnold's only examination consisted of routine tests to examine Plaintiff's memory, fund of knowledge, concentration and abstract

1  thought/judgment.  Tr. 447.  Dr. Arnold described these tests as a "cursory

2  inspection."  Tr. 447.  The ALJ's finding that DSHS reports are generally based on

3  a claimant's self-report appears borne out in this case.  The brevity of Dr. Arnold's

4  report suggests that no significant testing was performed on Plaintiff, therefore, it

5  is reasonable to conclude that his evaluation was based on Plaintiff's symptom

6  reports.  On this record, the ALJ's finding that Plaintiff's discredited self-reported

7  symptom testimony formed the basis of Dr. Arnold's opinion is a specific and

8  legitimate reason to discredit it.

9        The ALJ discounted the medical opinion because DSHS evaluations

10  generally only require providers to enter check-box forms without further

11  explanation.  Tr. 25.  An ALJ may permissibly reject check box reports that do not

12  contain any explanation of the bases for their conclusions.  *Crane v. Shalala*, 76

13  F.3d 251, 253 (9th Cir. 1996).  The Ninth Circuit instructs that check box forms

14  that are "supported by numerous records" are "entitled to weight that an otherwise

15  unsupported and unexplained check-box form would not merit."  *Garrison v.*

16  *Colvin,* 759 F.3d 995, 1013 (9th Cir. 2014).  Here, the relevant part of Dr. Arnold's

17  report, the work limitations, are presented only in a check box format without

18  further explanation.  Tr. 446.  While his report does contain some written findings,

19  they do not explain the reasoning behind his opined limitations.  Tr. 444-47.

20  Unlike the provider in *Garrison,* Dr. Arnold did not have an ongoing treating

relationship with Plaintiff to support his check box opinion.  *See Garrison,* 759 F.3d at 1013.  Instead, his check box opinion was the result of a single examination.  Accordingly, this was a specific and legitimate reason to reject Dr. Arnold's opined limitations.  *Crane*, 76 F.3d at 253.

However, the ALJ also relied on two general reasons to discount DSHS evaluations that were error.  The ALJ discredited Dr. Arnold's opinion because it was rendered for the purpose of determining Plaintiff's eligibility for state assistance and thus Plaintiff had an incentive to "overstate his symptoms and complaints."  Tr. 25.  It is well-settled in the Ninth Circuit that the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.  *See Lester*, 81 F.3d at 832.  An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner.  *Id*.  In the absence of other evidence undermining the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.  *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998).  Moreover, an ALJ "may not assume doctors routinely lie in order to help their patients collect disability benefits."  *Lester*, 81 F.3d at 832. To the extent the ALJ relied on the general nature of DSHS evaluations, and an applicant's purported resulting incentive to overstate his symptoms and complaints, the ALJ erred.

1         The ALJ discredited Dr. Arnold's opinion because DSHS rules governing

2    the definition and assessment of disability differ from those of the Social Security

3    Administration.  Tr. 25.  The regulations provide that the amount of an acceptable

4    source's knowledge of Social Security disability programs and their evidentiary

5    requirements may be considered in evaluating an opinion, regardless of the source

6    of that understanding.  20 C.F.R. § 404.1527.  The regulations also require that

7    every medical opinion will be evaluated, regardless of its source.  20 C.F.R. §

8    404.1527(c), 416.927(c).  Although state agency disability rules may differ from

9    Social Security rules regarding disability, it is not always apparent that the

10   differences in rules affect a particular physician's report without further analysis by

11   the ALJ.  Here, the DSHS form defines marked as "a very significant limitation on

12   the ability to perform one or more basic work activit[ies]."  Tr. 446.  As noted in

13   *Steinmetz v. Colvin*, 2016 WL 697141 at *5 (E.D. Wa., Feb. 19, 2016), further

14   analysis by an ALJ may be needed where a DSHS form does not define terms.

15   Here, the terms are defined, however, the ALJ did not explain how any differences

16   in definitions between SSA regulations and DSHS regulations mattered in this

17   case.

18        The errors, however, are harmless.  The ALJ cited other specific, legitimate

19   reasons supported by substantial evidence which support the ALJ's rejection of the

20   opinion.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02

(9th Cir. 1999).  Therefore, the outcome is the same despite the improper

reasoning.  Errors that do not affect the ultimate result are harmless.  *See Parra v.*

*Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131

(9th Cir. 1991); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th

Cir. 1984).

### 2. Mr. Wyatt

Physician Assistant Casey Wyatt treated Plaintiff between May 2012 and

October 2012.  *See* Tr. 285-313.  In July 2012, Mr. Wyatt diagnosed Plaintiff with

marked low back pain and noted restrictions in sitting, standing, walking, lifting,

carrying, handling, pushing, pulling, reaching, stooping, crouching and

communicating.  Tr. 439-41.  Mr. Wyatt limited Plaintiff to sedentary work and

opined that Plaintiff's work restrictions would continue for six to 12 months.  Tr.

441.  The ALJ afforded his opinion "little weight."  Tr. 25.

First, the ALJ noted that Mr. Wyatt's opinion "is not considered an

acceptable medical source who can provide evidence to establish an impairment[.]"

Tr. 25.  SSA regulations indicate that an "acceptable medical source" (generally a

doctorate-level medical provider) must establish that an impairment exists.  20

C.F.R. § 404.1513.  But, "other sources" may be drawn upon to determine the

severity of a claimants limitations.  20 C.F.R. § 404.1513.  Mr. Wyatt is

considered an "other source" whose opinion, if accepted, cannot establish an

impairment and is entitled to less deference than a physician's.  20 C.F.R. §§

404.1513(d), 416.913(d).  An ALJ must provide germane reasons to reject opinions

from "other sources," such as physician's assistants.  *Molina*, 674 F.3d at 1111.

Mr. Wyatt's opinion was contradicted by Dr. Vu's opinion, which the ALJ

favored.  It would be error for the ALJ to reject Mr. Wyatt's opinion solely because

it was an "other source" opinion, but it can properly be considered among other

germane reasons.  *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1223-1224 (9th

Cir. 2010).

Second, the ALJ discounted Mr. Wyatt's opinion because he "did not cite to

any examination findings or any objective findings."  Tr. 25.  A medical opinion

may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is

inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  The

report contains cursory notes about the Plaintiff's chief complaints, his treatment

history, and recommended additional tests.  Tr. 439 ("Chief complaints and

reported symptoms: severe back and leg pain. Worse with lifting, standing, sitting

long periods."); Tr. 439 ("Describe any treatment history including

hospitalizations: muscle relaxers[,] pain medication[,] home PT exercises"); Tr.

441 ("List any additional tests or consultations needed: MRI lumbar spine[,]

neurosurgery").  Notably, the report does not include any objective findings,

examination notes, list of tests performed, or indication of records reviewed.  *See*

Tr. 439-41.  In fact, Mr. Wyatt left blank the portion of the form instructing providers to "list all laboratory, imaging, range of motion, and other diagnostic test results (attach reports)[.]"  Tr. 440.  The lack of evidence to support Mr. Wyatt's opinion is a germane reason to discount it.

Third, the ALJ rejected Mr. Wyatt's opinion because it was completed for DSHS.  The ALJ cited the same reasons to reject DSHS opinions discussed regarding Dr. Arnold *supra*.  First, the ALJ discounts DSHS reports because they are based on self-reported symptoms.  Here, the only medical information contained in Mr. Wyatt's report is Plaintiff's self-reported pain, lending credence to the ALJ's conclusion.  Opinions based on self-reported symptoms that have been properly discounted may be dismissed by an ALJ.  *Sandgathe*, 108 F.3d at 980.  As discussed, Plaintiff did not challenge the ALJ's adverse credibility finding, so it is waived on appeal.  *Pottle,* 266 Fed.App'x at 528-29.  Second, the ALJ rejects DSHS reports because they are conducted to determine eligibility for state assistance, which gives Plaintiffs an incentive to exaggerate their symptoms.  As analyzed *supra,* the reason an examination was conducted is an inappropriate basis to reject the resulting opinion.  *Lester,* 81 F.3d at 832.  Third, the ALJ discounts DSHS reports because they use different standards for providing assistance than the SSA.  As in Dr. Arnold's report, Mr. Wyatt's report defines certain terms, such as "marked" [impairment] so that the ALJ can objectively

evaluate the reports without relying on the provider's conclusion erroneously based

on different criteria.  Here, the ALJ failed to explain how the differing regulations

matter.  Therefore, it is inappropriate for the ALJ to reject Mr. Wyatt's report on

this basis.  20 C.F.R. § 404.1527(c), § 416.927(c).  Fourth, the ALJ affords less

weight to DSHS evaluations because they are typically check-box forms.  While

Mr. Wyatt's report is not literally a check-box form, all of the arguments regarding

check-box forms apply.  Mr. Wyatt offered no support for his diagnosis, he did not

even write out his diagnosis, but simply indicated letters that corresponded to

different limitations.  Tr. 440.  Furthermore, as discussed above, even if the ALJ's

reliance on the second, third, and fourth factors is incorrect, the error is harmless as

the ALJ provided other germane reasons to reject Mr. Wyatt's opinion, notably

that he did not cite to any examination findings.  *Tommasetti v. Astrue,* 533 F.3d

1035, 1038 (9th Cir. 2008).

　　*3.  Dr. Vu*

　　Dr. Vu is a reviewing physician who testified at Plaintiff's hearing before

the ALJ.  *See* Tr. 43-63.  Dr. Vu opined that Plaintiff's symptoms were consistent

with lumbar spondylosis with compression and nerve room spinal cord issues.

Tr. 43.  He noted that hepatitis C was diagnosed in Plaintiff's record, but it was

mild.  Tr. 45.  He further noted that chronic obstructive pulmonary disease had not

been documented, sinusitis did not impact the Plaintiff's ability to work, and

testing related to Plaintiff's chest pain did not suggest that it imposed significant

work limits.  Tr. 45.  Dr. Vu ultimately opined that Plaintiff has the RFC to

perform light work with the ability to occasionally lift twenty pounds and

frequently lift ten.  Tr. 46.  The ALJ afforded Dr. Vu's testimony "significant

weight."  Tr. 26.

Plaintiff contends that Dr. Vu's testimony should not be afforded significant

weight because Dr. Vu discounted certain medical evidence in the record.  ECF

No. 14 at 15.  Plaintiff asks this Court to substitute counsel's medical opinion for

Dr. Vu's.  *Id.*  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina,* 674 F.3d at

1111.  Here, Dr. Vu's opinion is drawn from reasonable inferences with support in

the record.  For example, Dr. Vu's opinion that Plaintiff has lumbar spondylosis

was supported by MRI evidence which "documented disease in the discal system,

particularly at L4 and L5 with the disk protrusion and spinal stenosis."  Tr. 43.  To

support his conclusion that Plaintiff's diagnosed hepatitis C was minimally

restrictive, Dr. Vu cited the absence of a liver biopsy in the record, three tests

performed, and a lack of jaundice.  Tr. 44.  He concluded that that reported chest

pain and chronic obstructive lung disease was not significant because the record

did not contain an EKG or stress test to support it.  Tr. 45.  Plaintiff argues that

because of certain medical evidence identified by Plaintiff's counsel during the hearing, that Dr. Vu should have reached a different medical conclusion.  ECF No. 14 at 15.  However, because Dr. Vu supported his opinion with evidence in the record, this Court must uphold the discretionary decisions of the ALJ.  *Molina,* 674 F.3d at 1111.

Moreover, the ALJ credited Dr. Vu's opinion because "no treating/examining source opined that the claimant was more disabled than Dr. Vu found."  Tr. 26.  The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Here, not only did Dr. Vu rely on evidence throughout the medical record to form his opinion, it is not contradicted by any other non-discounted medical source in the record.  The only providers that opined that the Plaintiff was more disabled than Dr. Vu found were Dr. Arnold and Mr. Wyatt, both of whose opinions were properly discounted by the ALJ.

Second, Plaintiff contends that Dr. Vu was biased, and therefore his testimony should be disregarded.  ECF No. 14 at 15.  First, Plaintiff claims Dr. Vu's refusal to interpret the medical evidence as Plaintiff interprets it demonstrates bias.  As discussed *supra*, Dr. Vu's interpretation of the evidence was based on substantial evidence and the ALJ credited it, therefore, it cannot be

1    claimed that his interpretation was biased.  Second, Plaintiff argues that a single

2    comment from Dr. Vu demonstrates bias; that is, after Plaintiff's counsel thanked

3    Dr. Vu for testifying, Dr. Vu replied "interesting to talk about medicine with you at

4    the basic level."  ECF No. 14 at 15 (citing Tr. 63).  Bias in the social security

5    context requires more than a single passive aggressive comment.  Courts have

6    dismissed medical expert opinions for bias when the medical expert was found to

7    have helped the Claimant apply for benefits.  *Whitaker v. Astrue,* 2010 WL

8    3503417, at *3 (W.D. Wa., 2010).  The Ninth Circuit has opined that

9    " 'expressions of impatience, dissatisfaction, annoyance, and even anger, that are

10   within the bounds of what imperfect men and women ... sometimes display,' do not

11   establish bias." *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (quoting

12   *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)).  While this precedent was

13   established in the context of ALJ bias, the sentiment guides this Court.  While

14   Dr. Vu's comment to Plaintiff's counsel might have been discourteous, it does not

15   rise to the level of bias.  Dr. Vu's opinion was based on substantial medical

16   evidence, there is no indication that animus impacted his medical opinion.  The

17   ALJ did not err in assessing Dr. Vu's medical opinion substantial weight.

18   **B.  Past Relevant Work**

19          Second, Plaintiff argues that the ALJ erred in finding that Plaintiff could

20   perform past relevant work as a tool salesman.  ECF No. 14 at 16.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 22

At the fourth step of the sequential evaluation process, the claimant has the burden "to prove that he cannot perform his prior relevant work either as actually performed or as generally performed in the national economy." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir. 2008) (*citing Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (internal quotation marks omitted)). Past relevant work is work that was "done within the last 15 years, lasted long enough for [claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a).

Here, the ALJ determined that Plaintiff could perform work as a tool salesman as usually performed in the national economy. Tr. 26. Before Plaintiff's alleged disability onset, he worked as a tool salesman. Tr. 67. In that position, Plaintiff reported that he regularly lifted 50 to 75 pounds, as he would travel between stores and lift the tools into the store to sell them. *Id.* The vocational expert described hardware sales person as semi-skilled light work, however, opined that Plaintiff was performing the work as medium or heavy work. Tr. 84.

The vocational expert opined that a person with Plaintiff's education, work experience, and age that was limited to light work could perform the job as a hardware tool salesman, though not as Plaintiff performed that job.  Tr. 85.  Based on the vocational expert's testimony, the ALJ determined that Plaintiff could perform past relevant work as a tool salesman as the job was performed in the national economy.  Tr. 26.  Past relevant work as performed in the national economy is sufficient for the step four determination.  *Carmickle*, 533 F.3d at 1166.

Plaintiff further argues that if the ALJ had fully credited Dr. Arnold's opined limitations, he would not be able to work as a tool salesman even as performed in the national economy.  ECF No. 14 at 18.  As explained *supra,* the ALJ properly discounted Dr. Arnold's opinion and determined Plaintiff's RFC using other medical testimony.  Therefore, it was not in error for the ALJ to exclude Dr. Arnold's opined limitations when asking the vocational expert to offer an opinion on Plaintiff's occupational capabilities.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

2.  Defendant's motion for summary judgment (ECF No. 15) is **GRANTED.**

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

THE FILE.

DATED this 23rd day of January, 2017.

s/*Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE
